```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF INDIANA
                    HAMMOND DIVISION
```

| | |
|---|---|
| ANTONIO WALTON,              ) | |
|                              ) | |
| Petitioner,                  ) | |
|                              ) | |
| vs.                          ) | NO. 2:05-CV-1 |
|                              ) | (2:03-CR-59) |
| UNITED STATES OF AMERICA,    ) | |
|                              ) | |
| Respondent.                  ) | |

## OPINION & ORDER

This matter is before the Court on the: (1) Petition Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody, filed by pro se Petitioner, Antonio Walton, on January 5, 2005; and (2) Motion for Leave to Amend 28 U.S.C. Section 2255 Habeas Corpus Petition, filed by pro se Petitioner, Antonio Walton, on November 28, 2005.  For the reasons set forth below, the section 2255 motion is **DENIED** and the motion for leave to amend is **DENIED AS MOOT**.  The Clerk is **ORDERED** to **DISMISS** this case **with prejudice**.  The Clerk is **FURTHER ORDERED** to distribute a copy of this order to Petitioner (Prisoner No. 07529-027), Federal Correctional Institution, P.O. Box 5000, Pekin, IL 61555-5000.


BACKGROUND

On September 17, 2003, Walton pled guilty to one count of

possession of marijuana with intent to distribute, in violation of 21 U.S.C. section 841(a)(1) (Count 14 of the superseding indictment), and one count of possessing ammunition as a felon, in violation of 18 U.S.C. sections 922(g)(1) and 924(a)(2) (Count 15 of the superseding indictment). As part of the plea agreement, the Government agreed to dismiss the remaining count, conspiracy to distribute crack cocaine (Count 1 of the superseding indictment).

Walton's plea agreement contained a waiver stating that:

> I understand that the offenses to which I am pleading guilty fall under the Sentencing Guidelines promulgated by the United States Sentencing Commission under Title 28, United States Code, Section 994. I am aware that my sentence will be determined in accordance with the United States Sentencing Guidelines and this plea agreement. I agree that the Court has the jurisdiction and authority to impose any sentence within the statutory maximum set for my offense as set forth in this plea agreement. With that understanding, I expressly waive my right to appeal my convictions or sentence to any Court on any ground, including any claim of ineffective assistance of counsel. I also agree not to contest my conviction or sentence or the manner in which my convictions or sentence was determined or imposed on any ground including any alleged ineffective assistance of counsel in any appeal under Title 18, United States Code, Section 3742 or in any post-conviction proceeding, including but not limited to, a proceeding under Title 28, United States Code, Section 2255.

(Petition to Enter a Change of Plea, ¶ 9(l).)

Walton's change of plea hearing took place on September 17, 2003. During the colloquy with this Court, Walton indicated that he read the plea agreement, he had discussed it with his attorney, and that he

understood it.  (Plea Tr., p. 9.)  Walton also stated that he was fully satisfied with his counsel and the advice given to him by counsel.  (Plea Tr., p. 8.)  Walton stated he wished to plead guilty to Count 14 "[b]ecause [he] was possessing marijuana," and was going to sell it (Plea Tr., pp. 10, 13), and that he wished to plead guilty to Count 15 because he possessed nine-millimeter bullets and was a convicted felon.  (Plea Tr., pp. 11-13.)

During the change of plea hearing, the Court discussed relevant conduct with Walton as follows:

> Q: Now, you heard me say "are involved."  That doesn't mean what they found in your house on a particular day; or what they found on you on a particular day; or that you've dealt on a particular day; that may be other drugs that you have dealt or possessed on other dates; or it may mean drugs that other people dealt or possess that you had responsibility for.  Do you understand that?
> A: Yes.
> Q: Have you and your attorney talked about relevant conduct?
> A: Yes.
> Q: Do you understand that's a factor?
> A: Yes.

(Plea Tr., p. 25.)  The Court also discussed with Walton how his sentence would be calculated under the sentencing Guidelines and the statutory maximums that applied to each count.  (Plea Tr., pp. 23-31, 16-21.)

Prior to the sentencing hearing, Walton denied being involved with the conspiracy to distribute crack cocaine.  (Count 1 of the superseding indictment.)  However, during the sentencing hearing held

on May 25, 2004, Walton admitted to being involved in a conspiracy to distribute powder cocaine:

| | |
|---|---|
| Court: | Mr. Walton, do you understand that you are saying today that you were part of a conspiracy to obtain and distribute powder cocaine? |
| Defendant: | Yes. |
| Court: | And are you willing to accept responsibility for that? |
| Defendant: | Yes. |
| Court: | And are you indicating that that is true? |
| Defendant: | Yes. |

(May 26, 2004 Sent. Tr., p. 17.)  The Government agreed that there was not enough evidence to implicate Walton in a conspiracy to possess and distribute crack cocaine, and its position was that Walton was a member of a conspiracy to obtain and distribute powder cocaine. (Sent. Tr., p. 19.)  Upon counsel's advice, Walton withdrew his objections to the pre-sentence report relating to drug weight and the weapons enhancement.  (Sent. Tr., pp. 19, 21.)  Walton also acknowledged that his co-defendants had guns, that they were part of the conspiracy, and he had responsibility for the weapons under the law.  (Sent. Tr., pp. 17-18.)

This Court found that the total offense level was 25, and the criminal history level was 5, and it imposed a 60-month term on Count

14 and a 100 month term on Count 15, to be served concurrently, for a total term of 100 months imprisonment, plus a 3-year term of supervised release. (Sent Tr., pp. 22, 28.) Judgment was entered on May 27, 2004. Walton did not file a direct appeal with the Seventh Circuit.

Walton filed the instant 2255 petition on January 5, 2005. In that petition, he sets forth the following arguments. First, Walton contends that his guilty plea was not made voluntarily, because he did not understand the nature and the consequences of the sentence that would be imposed. Specifically, Walton contends he was not informed that he would be sentenced to a charge that the Government could not prove beyond a reasonable doubt. Second, Walton claims that the Government failed to disclose favorable evidence. This claim appears to be, in substance, an argument that his sentence was illegally enhanced in violation of *Blakely v. Washington*, 542 U.S. 296 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). Third, Walton claims his counsel provided ineffective assistance of counsel because he failed to file a direct appeal. Fourth, Walton also claims ineffective assistance of counsel because his attorney failed to call witnesses to testify at his sentencing and failed to interview witnesses.

On June 6, 2005, Walton filed a motion to amend his section 2255 motion. The Court largely granted Walton's motion to amend, but denied it to the extent Walton sought to add a *Blakely/Booker* claim.

The Court also ordered the Government to respond to all of the arguments in Walton's section 2255 motion and the motion to amend.

In his amended section 2255 petition, Walton makes the following arguments of ineffective assistance of counsel:  (1) his counsel should not have allowed a sentence for a drug amount not contained in the indictment; (2) his counsel should have challenged the evidence that Walton knew about the existence of a gun; (3) Walton was coerced into pleading guilty; and (4) there was no factual basis to support the amount of drugs.  Walton additionally claims that the Court denied him due process because it accepted a plea without a factual basis for the weapon count and the amount of drugs.  Finally, Walton claimed a *Blakely* error.[1]

The Government responded to all of the arguments set forth in Walton's section 2255 petition and his amended section 2255 petition. The Government argues that Walton waived his right to file a section 2255 petition; furthermore, his claims fail on the merits.

Walton then filed his Motion for Leave to Amend 28 U.S.C. Section 2255 Habeas Corpus Petition on November 28, 2005.  Although titled as a motion for leave to amend, in substance, the supporting brief seems more like a sur-reply, because it responds to the arguments set forth

---

[1] In this Court's June 21, 2005, order, it denied Walton's *Blakely/Booker* claim on the basis that such a claim does not apply retroactively to criminal cases that became final prior to January 12, 2005.  *See McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir. 2005).  The Court will not revisit this issue and stands by its previous ruling.

in the Government's response, but does not raise any new issues. Therefore, in ruling on the instant section 2255 petition, this Court has considered the arguments set forth in Walton's memorandum in support of his motion for leave to amend.

DISCUSSION

Relief under 28 U.S.C. section 2255 is reserved for "extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). In order to proceed on a petition pursuant to 28 U.S.C. section 2255, a federal prisoner must show that the district court sentenced him in violation of the Constitution or laws of the United States, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. *Id.*

In assessing Petitioner's motion, the Court is mindful of the well-settled principle that, when interpreting a pro se petitioner's complaint or section 2255 motion, district courts have a "special responsibility" to construe such pleadings liberally. *Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (a "pro se complaint, 'however inartfully pleaded' must be held to 'less stringent standards than formal pleadings drafted by lawyers'") (quoting *Haines v. Kerner*, 404 U.S. 519 (1972)); *Brown v. Roe*, 279 F.3d 742, 746 (9th Cir. 2002) ("pro se habeas petitioners are to be afforded 'the benefit of any doubt'") (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir.

1985)).  In other words:

> The mandated liberal construction afforded to pro se pleadings "means that if the court can reasonably read the pleadings to state a valid claim on which the [petitioner] could prevail, it should do so despite the [petitioner's] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."

*Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999) (habeas petition from state court conviction) (alterations in original) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).  On the other hand, "a district court should not 'assume the role of advocate for the pro se litigant' and may 'not rewrite a petition to include claims that were never presented.'"  *Id.*  Here, the Court assessed Petitioner's claims with those guidelines in mind.

Waiver

The Government contends that Walton waived his right to challenge his conviction and sentence in a post-conviction proceeding.  In his plea agreement, Walton expressly waived his right to appeal and his right "to contest [his] conviction or sentence or the manner in which [his] convictions or sentence was determined or imposed on any ground including any alleged ineffective assistance of counsel in any appeal under Title 18, United States Code, Section 3742 or in any post-conviction proceeding, including but not limited to, a proceeding

under Title 28, United States Code, Section 2255." (Petition to Enter a Change of Plea, ¶ 9(l).)

Additionally, the following colloquy occurred during the change of plea:

> Q.  [Y]ou are agreeing to give up all of your rights to appeal either the manner in which you were found guilty or any sentence that you may receive. Do you understand that?
> A:  Yes.
> Q:  Mr. Walton, for all practical purposes, that's all of your rights to an appeal. You may reserve one; that's incompetence of counsel. So you understand that?
> A:  Yes.

(Plea Tr., p. 33.)

The Seventh Circuit has recognized the validity of such waivers, and will enforce the waiver unless there is a claim that the plea agreement/waiver was entered into involuntarily, or that the waiver was a result of the ineffective assistance of counsel during the negotiation of the waiver. In *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999), the Seventh Circuit held that only two claims could be raised on a section 2255 motion by an individual who waived his right to appeal: (1) the defendant received ineffective assistance of counsel in negotiating the waiver; or (2) that the waiver was not knowingly and voluntarily made. *Jones* stated that courts should be:

> [m]indful of the limited reach of this holding, we reiterate that waivers are enforceable as a general rule; the right to mount a collateral attack pursuant to § 2255 survives only with respect to those discrete claims which relate

-9-

directly to the negotiation of the waiver.

*Id.* at 1145.

In *Mason v. United States*, 211 F.3d 1065, 1069 (7th Cir. 2000), the Seventh Circuit applied its holding in *Jones* to bar an ineffective assistance of counsel claim that related only to the petitioner's performance with respect to sentencing.  The Court found that "[b]ecause the challenge has nothing to do with the issue of a deficient negotiation of the waiver, [petitioner] has waived his right to seek post-conviction relief."  *Id.*  Additionally, the Court stated that the following analysis should be considered in determining whether a claim has been waived:

> can the petitioner establish that the waiver was not knowingly or voluntarily made, and/or can he demonstrate ineffective assistance of counsel with respect to the negotiation of the waiver?

*Id.*

In this case, Walton does not allege that his counsel was ineffective with regard to the negotiation of the waiver.  In fact, during his change of plea hearing, Walton stated that he was satisfied with the representation and advice given to him by his attorney.[2]

---

[2] The Court notes that it commended Walton's attorney for his representation in this case, stating during the sentencing hearing as follows:  "In this particular case, Mr. Walton, I think that even though you may not appreciate it at this time, that you are a very lucky person . . . . Based upon what I got, there was not enough evidence for me to find crack cocaine.  And the government did not want to pursue it along crack cocaine.  That alone has saved you 80 months of imprisonment.  That argument came from your attorney . . . . So there is a substantial period of time that has been saved off of your

-10-

(Plea Tr., p. 8.)

Although Walton does not precisely argue that the waiver was not knowingly or voluntarily made, he contends that his guilty plea was not made voluntarily because he would not have pled guilty "if he was aware that he would be sentenced for the conduct and drugs that his co-defendant possessed or sold." (Section 2255 Pet., p. 2.) Walton also contends that he was coerced by his attorney when counsel told him he would lose the plea agreement if Walton did not say he was part of a powder cocaine conspiracy. (Mem. in Supp. of Movant's 28 U.S.C. Section 2255 Motion, p. 2.) It seems that Walton's claims largely relate to his counsel's conduct during and after the sentencing stages, which occurred after the plea agreement was entered into, and are therefore waived. *See United States v. Chavez*, No. 03 C 7850, 2004 WL 842520, *3-4 (N.D. Ill. Apr. 19, 2004) (holding appeal waiver waived right to contest counsel's conduct that occurred after the defendant had signed his plea agreement because it could not be said to relate to the agreement's negotiations).

Even after granting a liberal reading to Walton's claims, and assuming *arguendo*, that he is arguing that the **waiver** was not knowingly made, to the extent Walton argues his waiver was involuntary, his claims are flatly contradicted by his testimony at

---

sentence, because your attorney has consistently fought on your behalf." (Sent. Tr., pp. 24-26.) The Court commended Walton's attorney "for being a strong advocate for [his] client's rights in this case. As it turned out, it was quite fruitful for [his] client." (Sent. Tr., p. 35.)

the change of plea hearing.  "Because of the great weight we place on these in-court statements, we credit them over [Petitioner's] later claims."  *United States v. Martinez*, 169 F.3d 1049, 1054 (7th Cir. 1999); *see also United States v. Schuh*, 289 F.3d 968, 975 )(7th Cir. 2002) (noting that "a careful plea colloquy under Rule 11 ensures that the guilty plea is knowing and voluntary"); *United States v. Mosley*, No. 93-1829, 19914 WL 503016, at *2-*3 (7th Cir. Sept. 14, 1991) ("Self-serving statements offered after the plea hearing generally fall in the face of contradictory voluntary statements made by the defendant during a plead hearing -- the latter are presume true."); *United States v. Ellison*, 835 F.2d 687, 693 (7th Cir. 1987) ("[V]oluntary responses made by a defendant under oath before an examining judge [are] binding.").

In the instant case, the Court went through each and every provision of the plea agreement and was satisfied that Walton understood the terms of the agreement and was making a voluntary and intelligent decision to plead guilty and waive any right to contest his sentence.  The Court went through the elements of the offense, and Walton answered the Court's questions, repeatedly stating that he understood the role of the guidelines, the charges against him, and the possible disposition of his case.  Further, Walton was informed of the maximum penalties for each count.  (Plea Tr., pp. 16-21.) Walton also stated that no one had made any specific agreement with him, or promises about what his specific sentence would be.  (Plea

Tr., pp. 35-36.)  The Court specifically warned Walton about the effect that relevant conduct may have upon his sentence, and when questioned about whether he understand that relevant conduct would be a factor, Walton answered in the affirmative.  (Plea Tr., p. 25.) Finally, during the sentencing hearing, Walton specifically admitted to being involved in a conspiracy to distribute powder cocaine. (Sent. Tr., p. 17.)  Walton also stated he made the decision to agree that he was part of a conspiracy to distribute powder cocaine knowingly and voluntarily, and no one was forcing him to make that admission. (Sent. Tr., p. 18.)

In sum, Walton has not alleged that he received ineffective assistance of counsel regarding the negotiation and acceptance of the agreement, and based upon the record, he cannot show that his waiver was not entered into knowingly and voluntarily.  This Court is satisfied that Walton voluntarily, knowingly and intelligently waived his right to seek post-conviction relief. *See United States v. Davis*, 348 F. Supp. 2d 964, 966 (N.D. Ind. 2004) (finding a similar section 2255 waiver sufficient, and ruling that defendant knowingly and intelligently waived his right to file a section 2255 motion). Therefore, the claims stated in his section 2255 petition are barred.

CONCLUSION

For the reasons set forth above, the section 2255 motion is **DENIED** and the motion for leave to amend is **DENIED AS MOOT.**  The Clerk

is **ORDERED** to **DISMISS** this case **with prejudice**.  The Clerk is **FURTHER ORDERED** to distribute a copy of this order to Petitioner (Prisoner No. 07529-027), Federal Correctional Institution, P.O. Box 5000, Pekin, IL 61555-5000.


**DATED:  December 20, 2005**          /s/RUDY LOZANO, Judge
                                       **United States District Court**